**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **SHOPSMITH IP HOLDINGS LLC,** an Ohio limited liability company, | : | Case No. ______________________ |
| Plaintiff, | : | Judge ________________________ |
| v. | : | |
| **SPECTRACOMP COMMUNICATIONS CORP. DBA ALEX'S SHOPSMITH REPAIR SHOP,** a Texas corporation, and **AL HUSSAIN**, an individual, | : | **JURY DEMAND ENDORSED HEREON** |
| Defendants. | : | |

## COMPLAINT

ShopSmith IP Holdings LLC ("Plaintiff"), for its Complaint ("Complaint") against Spectracomp Communications Corp. DBA Alex's ShopSmith Repair Shop and Al Hussain (collectively referred to as "Defendants"), alleges as follows:

## SUMMARY OF THE CASE

1. Plaintiff brings this lawsuit against Defendants for trademark infringement, unfair competition, and cybersquatting for Defendants' intentional misuse of Plaintiff's SHOPSMITH Trademarks in connection with Defendants' own goods and services.

2. To remedy Defendants' intentional misconduct, Plaintiff seeks, among other relief, damages and a permanent injunction barring Defendants from using any of Plaintiff's intellectual property.

## JURISDICTION AND VENUE

3. This civil action for trademark infringement and unfair competition is authorized pursuant to the federal Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

5. This Court has personal jurisdiction over Defendants in this action under, *inter alia*, O.R.C. § 2307.382(A)(1) through (3), because Defendants transact business in the state of Ohio, Defendants contract to supply services or goods in Ohio, and Defendants caused tortious injury by act or omission in Ohio. In addition, Defendants have had a physical presence in Ohio by visiting Plaintiff's place of business.

6. Venue in this Court is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

7. Plaintiff is, and was at all relevant times, an Ohio limited liability company with a business address of 6530 Poe Avenue, Dayton, Ohio 45414.

8. Defendant Spectracomp Communications Corp. DBA Alex's ShopSmith Repair Shop is, and was at all relevant times, a Texas corporation with a principal business address of 708 Grayhawk Drive Northeast, Rio Racho, New Mexico 87144.

9. Defendant Al Hussain is, and was at all relevant times, an individual with an address of 708 Grayhawk Drive Northeast, Rio Racho, New Mexico 87144.

## FACTUAL BACKGROUND

10. Plaintiff alleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully rewritten herein.

11. Plaintiff is known throughout the United States for its quality woodworking power tools.

12. Since at least as early as July 9, 2009, and long prior to any date upon which Defendants may rely, Plaintiff has sold woodworking power tools under its SHOPSMITH trademarks.

13. Plaintiff owns U.S. Trademark Registration No. 5,089,406 for SHOPSMITH in connection with "Multi-Purpose Power Tools Comprising Lathes, Drill Presses, Horizontal Boring Machines, Disc Sanders, Circular Saws, Shapers, Routers, and Dust Collectors; specifically adapted parts and attachments therefor, namely, bandsaws, jointers, belt, drum, strip and conical Sanders, jigsaws, scroll saws, lathe duplicators, pin routers, planers, molders, biscuit joiner, grinding wheels, and sharpeners; mounting bases and tables, table extensions, table inserts, table plates, support tables and castors all being specifically adapted parts for multi-purpose power tool; Power stands for machines and roller stands for machines; Faceplates, arbors and chucks being specifically adapted parts for multi-purpose power tool; Tailstocks being specifically adapted parts for multi-purpose power tool; Saw blades, jointer and planer blades all being specifically adapted parts for multi-purpose power tool; Router bits, power drill bits, and specifically adapted cases therefor; Dovetail cutters, shaper cutters, lathe centers, mortising attachments, mortising hold downs, tennons holders, rip fences, shaper fences and shaper collars all being specifically adapted parts for multi-purpose power tool; Saw guards being specifically adapted parts for multi-purpose power tool; Dado assemblies comprising of Blades and spacers being a specifically adapted parts for multi-purpose power tool; Lathe tool rests, lathe chisels, sand paper, fabric covers all being specifically adopted parts for multi-purpose power tool; Dowel centers and Coupling Kits comprised of a power coupler, head stock and accessory hubs, and all being specifically adapted parts for multi-purpose power tool" in International Class 7 (the "'406 Registration").

14. The '406 Registration is in full force and effect. A true and accurate copy of the Registration Certificate for the '406 Registration is attached hereto as **Exhibit 1**.

15. Plaintiff owns U.S. Trademark Registration No. 4,065,141 for in connection with "Digital Variable Reluctance motor used exclusively with the Shopsmith Mark V/7 multi-purpose woodworking power tool primarily as an upgrade to the existing motor contained therein" in International Class 7 (the "'141 Registration").

16. The '141 Registration is in full force and effect and has become incontestable in accordance with §§ 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b). A true and accurate copy of the Registration Certificate for the '141 Registration is attached hereto as **Exhibit 2**.

17. The '406 Registration and the '141 Registration are collectively referred to as "Plaintiff's SHOPSMITH Trademarks" herein.

18. Over the years, Plaintiff has focused on ensuring superior quality of its goods and services in order to build long-term goodwill associated with Plaintiff's SHOPSMITH Trademarks.

19. Plaintiff has extensively offered its goods and services under Plaintiff's SHOPSMITH Trademarks in Ohio and throughout the United States.

20. Plaintiff has invested substantial amounts of money, time, and effort related to goods and services bearing Plaintiff's SHOPSMITH Trademarks, long before Defendants' acts complained of herein.

21. Since long prior to the acts of Defendants complained of herein, Plaintiff's SHOPSMITH Trademarks have been readily recognizable by the public as associated exclusively with Plaintiff and Plaintiff's goods and repair services. The purchasing public generally associates and

identifies Plaintiff's SHOPSMITH Trademarks with the highest reputation and quality of Plaintiff's goods and services.

22. Plaintiff's SHOPSMITH Trademarks indicate the origin of Plaintiff's goods and services and are relied upon and recognized by the public as a symbol of and assurance as to the quality of Plaintiff's goods and services. As a result, Plaintiff's SHOPSMITH Trademarks have acquired substantial goodwill and are extremely valuable assets.

23. Defendants explain their services on the Internet (https://505smithrepair.com/shopsmith-mark-v-headstock-repair-options/).

24. Defendants have used Plaintiff's SHOPSMITH Trademarks in the name of their business to sell its goods and services, namely, ALEX'S SHOPSMITH REPAIR SHOP (the "Infringing Trademark"). **See Exhibit 3.**

25. To gather business for themselves and drive business away from Plaintiff, Defendants posted several comments on social media misrepresenting the nature, characteristics, and qualities of Plaintiff's goods and services.

26. Defendants, posting as "Alex Smith," imply they are "the only 'Authorized' shop" in a November 2, 2025 post on the Shopsmith Owners Group Facebook page:


Shopsmith Owners Group
Alex Smith · November 2, 2025 ·

Forget that we're "Number One." Forget that we're the only "Authorized" shop. Today, those are empty words, and no one cares!

Shopsmith owners today are detectives. They've done their homework. They've watched enough videos to understand their machines inside and out. They are looking for real value, honesty, and transparency.

So, stop just telling customers you're the best. Start giving them the tools to discover it for themselves.

They aren't interested in a certificate on the wall from 50 years ago. They want to see a portfolio of 'before and after' photos, detailed explanations of complex problems you've solved, and genuine testimonials from real people.

They want open pricing. That means clearly explaining why a repair costs what it does and giving them a transparent view of what they're paying for—not a vague quote followed by a price shock.

A single satisfied customer with a genuine review is worth more than a thousand "We're #1" ads. Showcase that proof everywhere, and let your customers become your most powerful advocates. See example of our work before and after below:

27. On or around May 8, 2026, Defendants, posting as "Alex Smith," misrepresent the nature, characteristics, and qualities of Plaintiff's goods and services by claiming, "Shopsmith Power Pro GEN1 Owners are Done For" and Plaintiff provides only a "forced upgrade disguised as a solution."



Shopsmith Owners Group
Alex Smith · May 8 ·

Shopsmith Power Pro GEN1 Owners Are Done For - The Verdict Is In

Would anyone in the community who watched the latest Q&A by the Shopsmith CEO care to correct me? Here is what he indicated:

if you own a Shopsmith Power Pro GEN 1 and your machine dies because of the legendary (and notoriously failing) power supply, then your only options are as follows:

Option one: Send it in. They will "upgrade" you to GEN 2 – for about $2,000 give and take few dollars.

Option two: Do the repair yourself. They are happy to sell you the "new power supply" – which is completely incompatible with your existing display. And since you can not just buy the new display because it would not fit with the old quill setup!

That's not a repair path. That's a forced upgrade disguised as a solution.

History is repeating itself.

For years, GEN 1 owners waited months for replacement power supplies – backordered, out of stock, radio silence. Now those same owners are being told there are no replacements available for the original GEN 1 power supply. The only "solution" on the table is to pay up for the GEN 2 conversion.

So if your GEN 1 dies today, you cannot simply replace the failed power supply and keep using your machine. Your display won't work with the new part. Your only choice is to spend two thousand dollars or have a very expensive paperweight.

The verdict? GEN 1 owners are done for. And Shopsmith knows it.

Even Best-Case Scenarios Don't Fix the Fundamental Flaw.

None of this changes the underlying risk to customers.

Why? Because the Power Pro GEN2 or GEN1 remains a product whose heart—the electronics and motor—is not made by Shopsmith. It never has been. And that single fact means every time you hand over your money for a Power Pro GEN2, you are playing Russian roulette with your money—hoping the chamber spins to safety instead of disaster.

The Core Problem: A Single Point of Failure Outside Shopsmith's Control The Shopsmith Power Pro's DVR motor and power supply have always been custom-manufactured by an overseas partner —specifically, by Teknatool or, Striatech, with Teknatool as the integrator). Shopsmith does not own the intellectual property. Shopsmith does not manufacture the components. Shopsmith cannot simply source replacements from any other vendor.

That means if Striatech goes under, changes its product line, or simply decides to stop making those specific components, every Power Pro GEN2 out there becomes a ticking time bomb. When your motor or power supply dies, there will be no replacements. And Shopsmith will be standing there, hands empty, telling you the same thing they told GEN1 owners: "Sorry, your only option is to pay for another full upgrade – if we even they can offer one by then."

BUYING A POWER PRO MEANS BUYING A MACHINE WHOSE LIFESPAN IS CONTROLLED ENTIRELY BY A THIRD-PARTY OVERSEAS SUPPLIER THAT YOU – AND SHOPSMITH – HAVE NO REAL CONTROL OVER. THAT'S NOT A TOOL. THAT'S A GAMBLE.

28. On or around June 25, 2026, Defendants attempt to drive business away from Plaintiff and to Defendants by misrepresenting the nature, characteristics, and qualities of Plaintiff's repair services by questioning whether Plaintiff's own repair services are "genuinely beneficial–

–or simply a short-term tactic to drive revenue and cover technician overhead."

> We are currently reshaping our repair operations with a clear focus on better serving our customers. For over 25 years, we've approached Shopsmith repair as true engineers—our process has always been straightforward: inspect, estimate, and repair with customer approval. We fix what truly needs fixing, nothing more.
>
> While a full teardown-and-replace-everything approach might sound appealing on the surface, we question whether it's genuinely beneficial—or simply a short-term tactic to drive revenue and cover technician overhead. Especially since many of the replacement parts are either difficult to source or cost-prohibitive for the average DIYer.
>
> As we chart this new direction, we genuinely value the feedback from this community. Your insights and real-world experiences are invaluable to us, and we want to ensure we're moving forward in a way that truly serves those who matter most—our customers.

29. Defendants attempt to drive business away from Plaintiff and to Defendants by misrepresenting the nature, characteristics, and qualities of Plaintiff's goods and services by bringing up an irrelevant bankruptcy from a third-party, and claiming Plaintiff's customers should not buy new products from Plaintiff because they could be "stuck with a machine that can't be repaired because parts aren't available."

> **Alex Smith's Post**
>
> Shopsmith Owners Group
> Alex Smith · 4h ·
>
> **How much would it cost to repair a Power Pro Gen 2 out of warranty? Does anyone know?**
>
> The only warranty information we can find shows the Gen 1 came with 5 years, but the Gen 2 only has one year. Wow that drop doesn't exactly inspire confidence.
>
> Let's say I buy one today and it dies after a year. What's the repair cost? Back in the Gen 1 days, repairs used to take up to six months because parts came from overseas and Teknatool didn't make them a priority. Now the warranty is just 12 months.
>
> **Q: Does the Gen 2 really avoid single-source dependency like Shopsmith claims in their recent newsletter?**
>
> A: Not really. The heart of the PowerPro is still the DVR motor, and that's Teknatool's proprietary technology. Shopsmith doesn't own the IP, so they're stuck if Teknatool runs into trouble. We recognize that Shopsmith could pull a miracle and hire new engineers to design a new machine from scratch—but we're not talking about some future possibility. We're talking about the here and now.
>
> **Q: Didn't Teknatool file for bankruptcy recently? And what if Shopsmith itself goes out of business again?**
>
> A: Yes—back in March 2025, Teknatool USA filed for Chapter 11 bankruptcy. Old news, perhaps, but the facts are still the same today. Teknatool and Striatech share the same address—same company for all intents and purposes. If one goes down, they both go down. Some forum members have expressed concern that this could be the end of Shopsmith if Teknatool doesn't recover.
>
> Both companies have faced this kind of trouble before in the not-so-distant past, and the likelihood they could do it again is real. If Shopsmith goes under, Gen 2 owners would be in the same boat as Gen 1 owners—stuck with a machine that can't be repaired because parts aren't available.
>
> **Q: What do actual owners think of the Gen 2 upgrade?**
>
> A: One Gen 2 owner put it bluntly: "It was a lot of money for not so much improvement."

30. Defendants' goods and services under the Infringing Trademark are identical or similar to to Plaintiff's services under Plaintiff's SHOPSMITH Trademarks.

31. Defendants are well aware of the strength of Plaintiff's SHOPSMITH Trademarks and the incalculable goodwill associated with that brand.

32. Notwithstanding that knowledge, and indeed because of that knowledge, Defendants improperly used, and continue to improperly use, the Infringing Trademark without Plaintiff's express permission, consent, and authorization.

33. Defendants' repeated and unauthorized use of the Infringing Trademark violates Plaintiff's rights in Plaintiff's SHOPSMITH Trademarks by, *inter alia*, creating confusion in the marketplace and encroaching upon Plaintiff's exclusive rights to Plaintiff's SHOPSMITH Trademarks.

34. Defendants' Infringing Trademark is confusingly similar to Plaintiff's SHOPSMITH Trademarks because, among other things: (a) Defendants' Infringing Trademark is nearly identical to Plaintiff's SHOPSMITH Trademarks in terms of appearance, sound, connotation, and overall commercial impression; (b) the goods and services are related as both marks are used in connection with woodworking power tools, which are specifically tailored for consumers who like woodworking; (c) the channels of trade are the same or highly similar; and (d) the consuming class is the same or highly similar as it is adults who like woodworking.

35. Defendants' use of the Infringing Trademark is designed to and is likely to cause confusion and mistake, to deceive customers and prospective customers as to the origin or sponsorship of Defendants' goods and services, and to cause them to falsely believe that Defendants' goods and services are the goods and services of Plaintiff, or are sponsored,

licensed, authorized, or approved by Plaintiff, all to the detriment of Plaintiff, the trade, and the public. Defendants' continued and improper use of the Infringing Trademark is willful.

36. Plaintiff has been damaged by Defendants' acts of infringement.

37. Defendants' acts have caused and will continue to cause substantial and irreparable injury to Plaintiff unless such acts are restrained by this Court.

38. Plaintiff has no adequate remedy at law.

39. Defendants' activities amount to trademark infringement and unfair competition.

40. On July 9, 2026, Plaintiff sent a cease-and-desist letter to Defendants, but Defendants have refused to cease infringing Plaintiff's trademarks or cooperate with negotiations.

**COUNT I: FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. §§ 1114-1117; Lanham Act § 32**

41. Plaintiff alleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully rewritten herein.

42. Plaintiff has used and continues to use Plaintiff's SHOPSMITH Trademarks in commerce in connection with Plaintiff's goods and services.

43. Despite Defendants' notice of Plaintiff's ownership of Plaintiff's SHOPSMITH Trademarks, Defendants have used and continue to use the Infringing Trademark in commerce without Plaintiff's consent in connection with Defendants' goods and services.

44. Defendants' acts of willful trademark infringement have been committed with the intent to cause confusion, mistake, or deception, cause harm to Plaintiff and consumers, and are in violation of 15 U.S.C. § 1114.

45. Defendants' acts have harmed Plaintiff's reputation, damaged Plaintiff's goodwill, and upon information and belief, have and will continue to divert sales from Plaintiff.

46. As a direct and proximate result of Defendants' infringing activities, Plaintiff is entitled to recover all of Defendants' unlawful profits, Plaintiff's damages, Plaintiff's costs, and treble damages under 15 U.S.C. § 1117(a).

47. Defendants' infringement is exceptional and intentional, entitling Plaintiff to attorney fees under 15 U.S.C. § 1117(a).

48. Further, Defendants' past and continuing infringement of Plaintiff's registered Trademark has caused and will continue to cause irreparable injury to Plaintiff. Unless restrained and enjoined, Defendants will continue to commit such acts of infringement. Accordingly, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

49. Wherefore, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

**COUNT II: UNFAIR COMPETITION**
**15 U.S.C. § 1125(a); Lanham Act § 43(a)**

50. Plaintiff alleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully rewritten herein.

51. Defendants' infringing use of the Infringing Trademark tends falsely to describe its goods and services within the meaning of 15 U.S.C. § 1125(a)(1).

52. Defendants are using the Infringing Trademark in order to confuse the public into believing that Defendants' goods and services have been authorized, licensed, or sponsored by Plaintiff.

53. The public and/or any consumer of Plaintiff's goods and services viewing Defendants' brand name, business materials, website, and/or social media amounts, would likely purchase Defendants' goods and services based upon the misperception that Defendants are somehow affiliated with Plaintiff.

54. Defendants misrepresent the nature, characteristics, and qualities of Plaintiff's goods and services.

55. Defendants' conduct is likely to cause confusion, mistake, or deception, and have already caused confusion, mistake, and deception, as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants and Defendants' goods and services by or with Plaintiff and Plaintiff's goods and services and thus, constitute unfair competition, false designation of origin, and/or false description or representation in violation of 15 U.S.C. § 1125(a)(1).

56. As a direct and proximate result of Defendants' infringing activities, Plaintiff is entitled to recover all of Defendants' unlawful profits, Plaintiff's damages, Plaintiff's costs, and treble damages under 15 U.S.C. § 1117(a).

57. Defendants' infringement is exceptional and intentional, entitling Plaintiff to attorney fees under 15 U.S.C. § 1117(a).

58. Further, Defendants' past and continuing infringement of Plaintiff's SHOPSMITH Trademarks has caused and will continue to cause irreparable injury to Plaintiff. Unless restrained and enjoined, Defendants will continue to commit such acts of infringement. Accordingly, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

59. Wherefore, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

**COUNT III: CYBERSQUATTING**
**15 U.S.C. § 1125(d); Lanham Act § 43(d)**

60. Plaintiff alleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully rewritten herein.

61. Defendants registered the domain shopsmithusa.com.

62. For a short time, Defendants redirected shopsmithusa.com to Plaintiff's website apparently to make consumers believe the domain shopsmithusa.com was a legitimate domain owned by Plaintiff.

63. On or around June 29, 2026, Defendants parked the domain shopsmithusa.com and demanded $7,500.00 from Plaintiff for the domain shopsmithusa.com without having an intent to use the domain shopsmithusa.com for a bona fide offering of goods or services.

64. Plaintiff has been damaged by Defendants' unlawful use of the domain shopsmithusa.com and will suffer irreparable harm.

65. Defendants' conduct is in violation of the Anticybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

66. Wherefore, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff is entitled to, and hereby demands, judgment in its favor and against Defendants, jointly and severally, and relief as follows on all Counts of this action:

(A) That this Court will adjudge that Plaintiff's SHOPSMITH Trademarks have been infringed, as a direct and proximate result of the willful acts of Defendants as set forth in this Complaint, including Defendants' use of the Infringing Trademark, in violation of Plaintiff's rights under federal law;

(B) That this Court will adjudge that Defendants have competed unfairly with Plaintiff in violation of Plaintiff's rights under federal law;

(C) That Defendants, their agents, servants, employees, attorneys, representatives, successors, and assigns be enjoined and restrained preliminarily and permanently from displaying, or promoting any goods or services using any words, symbols, or

designs that so resemble Plaintiff's SHOPSMITH Trademark as to be likely to cause confusion, mistake, or deception, on or in connection with any product or service that is not authorized by or for Plaintiff;

(D) For an Order transferring shopsmithusa.com from Defendants to Plaintiff;

(E) That Defendants, their agents, servants, employees, attorneys, representatives, successors, and assigns be enjoined and restrained preliminarily and permanently from competing unfairly with Plaintiff in any manner;

(F) For an accounting be directed to determine Defendants' profits resulting from their activities and that such profits be paid over to Plaintiff;

(G) For an Order awarding Plaintiff recovery of all damages it sustained as a result of Defendants' activities;

(H) For an Order awarding Plaintiff treble damages and costs;

(I) For an Order awarding Plaintiff pre-judgment and post-judgment interest on each and every damage award;

(J) For an Order awarding Plaintiff attorney fees pursuant to 15 U.S.C. § 1117(a); and

(K) For such other and further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a jury trial by jury as to all issues triable of right by jury.

Dated: September 3, 2026

Respectfully submitted,

EMERSON THOMSON BENNETT, LLC

*/s/ Todd A. Fichtenberg*

Todd A. Fichtenberg (OH Bar #0088176)
3841B Attucks Drive
Powell, OH 43065
(330) 434-9999 | telephone
(330) 434-8888 | facsimile
taf@etblaw.com

*Attorneys for Plaintiff*